Gary JAMES, Plaintiff-Appellee,

v.

SEA–LAND SERVICE, INC., Defendant-Appellant,

and the S. S. MAIDEN CREEK, Defendant.

No. 71–2877

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1972.

Rae M. Crowe, T. K. Jackson, III, Mobile, Ala., for defendant-appellant.

Ross Diamond, Jr., Mobile, Ala., for plaintiff-appellee.

Before GEWIN, AINSWORTH and Simpson, Circuit Judges.

PER CURIAM:

Gary James (James) was employed as a longshoreman on June 25, 1968, by Ryan Stevedoring Company (Ryan) at Mobile, Alabama. He was ordered to perform longshoreman's duties aboard the S.S. MAIDEN CREEK, owned by Sea-Land Service, Inc., (Sea-Land), in the deep tanks located in the number three hold. After working for approximately three hours, James became ill and passed out. He was removed from the vessel and transported to a physician's office and eventually to Mobile

* ▮ Rule 18, 5 Cir., See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

General Hospital. James subsequently brought suit against Sea-Land and the S.S. MAIDEN CREEK for personal injuries allegedly suffered as the proximate result of carbon monoxide poisoning in the deep tank, number three hold, of the S.S. MAIDEN CREEK, on June 25, 1968. After a non-jury trial, judgment was entered in favor of James in the amount of $65,000.00 from which Sea-Land has appealed. We affirm.

The district court's findings of fact may be capsulated as follows: Ryan had contracted with Sea-Land to load certain cargo on pallets into the number three hold of the S.S. MAIDEN CREEK with particular reference to the deep tanks in that hold. James and his fellow workers began work at approximately 8:30 A.M. in the port deep tank. The pallets loaded with paper cargo were being placed in position by a gasoline-powered forklift machine, which began its operations in the deep tank between 8:30 A.M. and 9:00 A.M. and continued until approximately 11:30 A.M., when James became ill. Ventilation into the port deep tank in number three hold was not built-in, so a portable electric blower was provided for that purpose and placed on the main deck, with a plastic hose lowered across the hatch coaming and dropped into the deep tank. Because the blower was inadequate for its intended purpose and because the hose became crimped as it crossed the hatch coaming, inadequate ventilation was provided for the port deep tank. At about 10:30 A.M. a carbon monoxide concentration test was made in the port deep tank which revealed a concentration of 200 parts per million parts of air. This reading exceeded the limit fixed by the United States Department of Labor's Safety and Health Regulations for Longshoring (Section 1504.93, requiring the removal of employees from the compartment involved when the carbon monoxide level exceeds 100 parts per million). James and his fellow workers were not removed at 10:30 A.M. but continued to work with the forklift until about 11:30 A.M., when James became ill. His illness was proximately caused by his exposure to excessive amounts of carbon monoxide or other noxious gases emitted by the forklift. As a direct result of the carbon monoxide intoxication suffered on June 25, 1968, James' bronchitis and reduction in breathing capacity was either caused or aggravated. Further, that incident caused James to suffer a totally disabling anxiety neurosis. At the time of the accident, James was 52 years of age and earned average wages in excess of $5,500.00 per year. The district court concluded that the vessel S.S. MAIDEN CREEK was unseaworthy because of the accumulation of carbon monoxide or other noxious gases in the port deep tank of hold number 3 and that James was entitled to recover the sum of $65,000.00 as damages for injuries suffered because of the vessel's unseaworthiness.

■ Sea-Land first contends that there was no competent or substantial evidence introduced at trial to establish that James was totally or permanently disabled and to establish that the conditions described by James' physician were caused by exposure to excessive levels of carbon monoxide. Our examination of the record on appeal convinces us that the district judge's findings of fact in this regard are not "clearly erroneous". McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, Rule 52(a), Federal Rules of Civil Procedure. We would not be justified in disturbing them on appeal.

■ Sea-Land next argues that the Supreme Court's recent decision in Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562, dealing with the doctrine of operational negligence causing instant unseaworthiness, dictates reversal of the district court's judgment in this case. For the reasons outlined in our opinion in a case involving injury from similar causation, Carey v. Lykes Brothers Steamship Company, Inc. v. Ryan Stevedoring Company, Inc., 5 Cir. 1972, 455 F.2d 1192, we hold that the *Usner* ruling does not apply to the unseaworthy condition involved here.

Finally, Sea-Land asserts that the damages awarded by the district court were excessive. The district court found James to have been permanently and totally disabled by the accident of June 25, 1968. In view of the nature of James' injuries, the award was not excessive.

Affirmed.